## American Tobacco Company v. Bland.

(Decided October 27, 1911.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. Personal Injury—Action for Damages—Sufficiency of Evidence.— In an action for damages for personal injuries, evidence examined and held sufficient to take the case to the jury and to sustain the verdict.

2. Instructions.—Where the master directs a servant to wipe off a machine, and assures him that it will not be put into operation for some time, and the servant relying upon this assurance undertakes the work and is injured because the machine was negligently started, he may recover for his injuries, and it was not error to refuse to qualify the instruction given by adding the words "unless the danger was so obvious that a person of ordinary prudence would not have undertaken the work, for with the machine not in operation, there was no danger at all.

O'NEAL & O'NEAL, BROWN & NUCKOLS for appellant.

EDWARDS, OGDEN & PEAK, HUSTON QUINN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, Harry B. Bland brought this action against the defendant, American Tobacco Company, to recover damages for personal injuries alleged to have resulted from defendant's negligence. The jury returned a verdict in his favor for $1,999, and from the judgment predicated thereon this appeal is prosecuted.

Plaintiff was employed by defendant in its tobacco factory in Louisville, and worked at a machine used for nailing tobacco boxes together in bundles. The boxes were brought to plaintiff's machine by other employes. They were then fed into the machine by plaintiff, and, as they came out on the other side, nailed together, they were carried away by other employes. The machine at

which plaintiff worked was located in a room on the first floor of defendant's plant. Near the ceiling of this room was a horizontal shaft, which was connected with the engine in such a way that it revolved constantly while the plant was in operation. The machine which plaintiff operated got its power from the shaft by the means of a belt. There was one pulley on the axle of the machine, over which the belt ran, and two pulleys on the shaft directly above. One of the pulleys on the shaft was fixed firmly, and was known as the "tight" pulley; the other was a "loose" pulley or "idler." The belt could be shifted from the tight to the loose pulley, or vice versa, by means of a clutch. When the belt was shifted to the tight pulley the machine was put in operation; when shifted to the loose pulley the machine was stopped. In a room on the second floor, directly over this machine, was located a "casing" machine used for casing or dampening the plug wrappers. This casing machine got its power from the same shaft which furnished power for plaintiff's machine, by means of a belt running through a hole in the ceiling of the lower room. The casing machine and plaintiff's machine below were so connected that when the casing machine was put into operation by shifting its belt, the belt of plaintiff's machine was also shifted to the tight pulley, and the latter machine put into operation, at the same time. The only way to prevent the nailing machine at which plaintiff worked from being started when the casing machine was started, was for some one on the lower floor to take hold of the clutch used for shifting the nailing machine belt, and hold it back.

According to plaintiff's evidence, his machine got out of order some time prior to his injury. Upon reporting this fact to defendant's foreman, he was required to stop the machine and hold the clutch while the foreman tried to repair it. The foreman, failing in this, directed plaintiff to have the millwright, Mr. Roberts, make the necessary repairs. The latter, after working on the machine for a while, put it in condition to operate. While Roberts worked on the machine plaintiff held the clutch. After the machine was put in operation and run for a while, those working at it got out of material, and the foreman directed certain men there employed to go to another department for additional material. Plaintiff, after closing down his machine, started to the water cooler to get a drink, when the foreman directed him to wipe off his

machine. Plaintiff declined to do so, on the ground that there was no one present to hold the clutch. Thereupon the foreman assured him that the machine on the second floor was out of order and would not be operated for some time, and that it was not necessary for the clutch to be held on that account. Relying upon this assurance, plaintiff began to clean the machine as directed. Within a minute or two thereafter the belt was shifted from the loose to the tight pulley by reason of the machine on the second floor being put into operation. This occurred so quickly that plaintiff's right hand was caught in the cogs, and all his fingers and part of the thumb were so badly mashed that amputation became necessary.

The evidence for the defendant is to the effect that the casing machine upstairs had been out of order two or three days, and was not started at all at the time plaintiff was injured; on the contrary, plaintiff undertook to clean his machine while it was in motion, and was thus injured through his own carelessness. Defendant's foreman never assured plaintiff that the machine upstairs was out of order and would not be running for some time.

While, perhaps, the weight of the evidence is with defendant, we cannot say, either that there was no evidence justifying the submission of the case, or that the finding of the jury is flagrantly against the evidence.

The court instructed the jury as follows:

"1. The court instructs the jury that if you believe from the evidence that the plaintiff, Harry Bland, was directed by the defendant's foreman, William Young, to stop his machine and clean the same, and that said Young at said time assured the plaintiff that said machine would not be placed in operation for some time, and relying upon said assurance the plaintiff stopped the machine and entered upon the work of cleaning the same, and while so engaged said machine was negligently started or put in operation and the plaintiff was thereby injured, then the law is for the plaintiff and the jury should so find."

Instruction two is the converse of the above, while instruction three is the usual instruction on contributory negligence.

The defendant asked the following instruction:

"If the jury believe from the evidence that notwithstanding the assurance of safety of the foreman, Wm. Young, if any was given, the danger of the work ordered

was so gross or imminent and apparent that a man of ordinary prudence and care would not have taken the chance or performed the same the law is for the defendant and the jury should so find.''

This instruction was asked in view of those cases holding that where the master directs the servant to do a particular work the servant may lawfully obey the order relying upon the superior knowledge and judgment of the master, and if injured in the course of the work may recover, unless the danger was so obvious that a person of ordinary prudence would not have undertaken the work. We fail to see, however, the necessity for giving such an instruction in the case before us. With the machine not in operation, there was absolutely no danger in attempting to clean it; it could become dangerous only in the event it was started. Having been assured by his foreman that the machine would not be started, there was absolutely no danger at all, much less a danger so obvious that an ordinarily prudent person would not have undertaken the work.

Judgment affirmed.